IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MELANIE OGLETREE,          :
                           :
                           :
        Plaintiff,         :
                           :
v.                         :        CIVIL ACTION NO.
                           :        1:19-CV-03806-LMM
                           :
AETNA LIFE INSURANCE        :
COMPANY,                   :
                           :
        Defendant.         :

## ORDER

This case comes before the Court on Plaintiff Melanie Ogletree's

Motion for Summary Judgment [21] and Defendant Aetna Life Insurance

Company's ("Aetna") Motion for Judgment on the Administrative Record

[22]. After due consideration, the Court enters the following Order.

## I.    BACKGROUND

Plaintiff brings this suit under the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq., and seeks to

recover long-term disability benefits under a group policy issued by

Defendant Aetna to her former employer, United Parcel Services of

America, Inc. ("UPS"). See Dkt. No. [1]. Plaintiff argues that Defendant's

decision to deny her long-term disability benefits was (1) wrong and (2)

unreasonable. Dkt. No. [21-1] at 20–24. By contrast, Defendant argues that

its denial was (1) correct and that (2) even if the Court were to disagree, the Court should nevertheless afford deference to Defendant's decision because it was reasonable and not arbitrary or capricious. Dkt. No. [22-10] at 20–23.

The relevant facts in this case, which are discussed in detail below, are based entirely on the administrative record. The primary point of disagreement between the parties is whether Plaintiff's medical documentation for the time period relevant to her long term disability claim—which stems from her absence from work at UPS as of November 15, 2017, due to ███████████████████—supports a finding that she was functionally impaired from performing the material duties of her occupation due to her claimed disability. See generally Dkt. Nos. [21-1, 22-10]. Though Defendant acknowledges that the "evidence in the administrative record showed [Plaintiff] has ███████████████ and that ██████████ states she has no work capacity," Defendant argues that ██████████ records did not support that level of restriction during the time period she claimed to be disabled." Dkt. No. [27] at 2.

As a preliminary matter, the Court notes that Plaintiff has moved for summary judgment under Rule 56, and Defendant has moved for judgment on the administrative record under Rule 52. "In the ERISA context, motions under Rule 52 or under Rule 56 are nothing more than vehicles . . . for [a] decision on the administrative record. Thus, regardless of the specific

vehicle chosen, the standard of review—which requires the Court to review the administrative record—remains the same." <u>Graham v. Life Ins. Co. of N. Am.</u>, 222 F. Supp. 3d 1129, 1137 (N.D. Ga. 2016) (citations and internal quotation marks omitted). The Eleventh Circuit has also stated that in cases based on an agreed-upon administrative record, "Rule 56 practice seems to be an extra and unnecessary step—and one that can result in two appeals rather than one." <u>Doyle v. Liberty Assurance Co. of Boston</u>, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008) ("It seems preferable in a case [based on the administrative record] to determine by conference or stipulation whether either party desires to present evidence beyond the administrative record, and, if not, take the case under submission and enter findings of fact and conclusions of law."). In this case, the parties have relied on the administrative record and have not indicated to the Court that they wish to present evidence beyond that record. Accordingly, the Court will enter findings of fact and conclusions of law pursuant to Rule 52. <u>See</u> Fed. R. Civ. P. 52(a)(1).

## II.      FINDINGS OF FACT[1]

### A. The Long-Term Disability Group Policy

---

[1] The findings of fact and conclusions of law in this Order are based on the administrative record that was available to Defendant when it made its decision regarding Plaintiff's long-term disability benefits. <u>See</u> <u>Blankenship v. Metro. Life Ins. Co.</u>, 644 F.3d 1350, 1354 (11th Cir. 2011) (per curiam).

Effective January 1, 2013, Defendant Aetna issued Group Policy No. GP-839230-GI ("the group policy") to UPS to fund long-term disability benefits under UPS's employee welfare plan, which is governed by ERISA. AR 1493.[2] Under the group policy, the "Test of Disability" is as follows:

> From the date that you first became disabled and until monthly benefits are payable for 24 months, you meet the test of disability on any day that:
>
> - You cannot perform the material duties of your own occupation solely because of: an illness; or an injury; or a disabling pregnancy-related condition; and
> - Your earnings are 10% or less of your adjusted predisability earnings.
>
> After the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition.

AR 1519. Additionally, the group policy provides Defendant with the "discretionary authority to review all denied claims for benefits under this Policy[,]" and that, "[i]n performing its review, [Defendant] shall have discretionary authority to determine whether and to what extent employees

---

[2] Defendant attached the administrative record to its Motion for Judgment on the Administrative Record as Exhibits 2–9. See Dkt. Nos. [22-2]–[22-9]. Plaintiff incorporated these exhibits by reference. Dkt. No. [21-1] at 1 n.1. Both parties rely on the record's Bates numbers for record citations, and the Court likewise refers to the Bates numbers themselves rather than to each individual docket entry when citing the administrative record. Like the parties, the Court omits the leading zeroes in these labels, so, for example, AR 000001 is cited as AR 1.

and beneficiaries are entitled to benefits; and construe any dispute or doubtful terms of this Policy." AR 1519.

### B. Plaintiff's Employment and Prior Mental Health Treatment

Plaintiff was employed at UPS as of January 7, 2002, and last worked for UPS as a Deployment Specialist on November 14, 2017. AR 675, 684. As a Deployment Specialist, Plaintiff's "essential job functions" included working "9-10 hours per day, 5 day per week"; reporting to work on a regular and timely basis; "[p]erform[ing] office tasks" such as "paperwork, typing, and/or use of a computer, filing, and calculating"; supervising and training employees effectively; "[w]ork[ing] with and manag[ing] other employees' time and activities"; and demonstrating "a sufficient ability to communicate, through sight, hearing, and/or otherwise to perform tasks and maintain proper job safety conditions." AR 1433. Plaintiff was also required to "[d]emonstrate cognitive ability to: follow directions and routines; work independently with appropriate judgment; exhibit spatial awareness; read words and numbers; concentrate, memorize, and recall; analyze and interpret data/reports; identify logical connections and determine sequence of response; processing up to 2-3 steps ahead." AR 1433.

Plaintiff had a demonstrated history of ████████ treatment, including while she worked at UPS. ██████████████████

5

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████ Following these episodes, Plaintiff recovered

sufficiently to return to full-time work. AR 1125.

**C. Plaintiff's 2017 Absence from Work and Treatment by**
██████████████████

Plaintiff's last day of work at UPS was November, 14, 2017. AR 675.

During the time relevant to Plaintiff's long-term disability claim, Plaintiff

continued to see ██████████████████ ████ ████. <u>See</u> AR 1127–59.

His medical records were part of the files eventually reviewed for Plaintiff's

short-term and long-term disability claims. <u>See</u> AR 561, 984–85, 1375,

1026–27.

On November 14, 2017, Plaintiff had an office visit with ████████.

AR 1127. █████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████



Plaintiff was thereafter absent from work as of November 15, 2017. AR 559–61.

In a document dated November 19, 2017, and in connection with Plaintiff's short-term disability claim that pre-dated her long-term disability claim, ▓▓▓ submitted to Aetna a ▓▓▓ Health Clinician Statement. AR 658–60. On this form, ▓▓▓ indicated his response to various "yes" or "no" questions regarding Plaintiff's condition by either circling or marking the corresponding box and sometimes providing additional notations. AR 658–60. On this form, ▓▓▓ indicated that he supported Plaintiff being out of work. AR 658. He indicated that Plaintiff required

7

assistance to ██████████ and, under "Additional Examination

Findings/Notes," wrote, ██████████████ AR 658. ████████ further

indicated that ██████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████. AR 659.

On December 20, 2017, following Aetna's request for a clinical update

regarding Plaintiff's short-term disability claim, ████████ provided

answers to questions about his treatment of Plaintiff. AR 646. He

responded ██████████ in response to a question regarding how often he

saw Plaintiff for office visits, ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████ AR 646.

Plaintiff had a follow-up visit with ████████ on January 10, 2018.

AR. 1129. In the "Initial Presenting Symptoms" section of his note, ██

████████████████████████████████████████



Plaintiff's next follow-up visit with ███████ was on February 19,

2019. AR 1130. In the "Initial Presenting Symptoms" section of his note, ██

Plaintiff followed up with ███████ on March 6, 2018. AR 1131. ██

███████████████████████████████████████

███████████████████████████████████████████

████████  ███████████████████████████████████

██████

Plaintiff's next follow-up was on April 3, 2018. AR 1133. In the "Initial

Presenting Symptoms" section of ████████ note from that day, he stated,

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

████████  ████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████

On June 27, 2018, Plaintiff had another follow-up visit with ████

████. AR 1135. In the "Chief Complaint" section of his notes, ████████

█████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████

10



███████████████████████████████████████████████████████████████

██████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████

Shortly thereafter, in correspondence dated July 31, 2018, and again as part of Plaintiff's short-term disability claim, ████████ office submitted additional information to Aetna. AR 583–85. The questions sent to ██████████ office were posed by ████████████████████ ███████████████, who was assigned as an independent peer reviewer of Plaintiff's short-term disability file. AR 560. In this document, ███████████ office indicated that ████████████████████████████ ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



Plaintiff had follow-up visits with ███████ on October 8, 2018,[4] and November 5, 2018. AR 1147–59. On November 5, in the "Chief Complaint" section of his notes, ███████ wrote that ████████████████████

_____

[3] In a letter dated September 26, 2018, the UPS Claims Review Committee ("the Committee") responsible for determining Plaintiff's short-term disability benefits eligibility notified Plaintiff of its determination that she was functionally impaired from November 15, 2017, to April 5, 2018. AR 561–62. However, the Committee explained that from April 6, 2018 onward, there was "insufficient objective clinical examination findings to support a conclusion that [Plaintiff] [was] unable to perform the substantial and material duties of [her] occupation . . . ." AR 561. The Committee explained its determination with reference to its review of Plaintiff's medical records, as well as to ███████ "Physician Review," both of which reached similar conclusions. AR 561–62. In particular, the Committee noted that ███████ June 27, 2018, and July 25, 2018 clinical notes indicated, *inter alia*, that ███████ The letter also stated that clinical notes from another doctor whom Plaintiff had seen on June 6, 2018, for ███████ also indicated that ███████ The Committee concluded, "This would not be indicative of a disabling ███████ condition." AR 562.

[4] The notes for Plaintiff's visit with ███████ on October 8, 2018, are discussed in the next section with reference to the additional documentation Plaintiff submitted as part of her first appeal of Defendant's long-term disability benefits decision.

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

████████████████████

### D. Plaintiff's Long-Term Disability Claim

Plaintiff reported her long-term disability claim to Defendant on October 4, 2018. AR 684. Plaintiff's eligibility for long-term disability would have become effective on May 16, 2018. AR 937.  In a letter dated November 2, 2018, Defendant denied Plaintiff's long-term disability claim, stating, "It is our opinion that you do not meet the definition of Disability under the plan." AR 937. Defendant's letter noted that its review "confirm[ed] [Plaintiff's] diagnosis of ███████████" but stated that "there [was] no medical data provided for review to support a functional impairment due to your ██████████ condition."[5] AR 938.

_____

[5] Plaintiff argues that, "[d]espite having the short-term disability file, [Defendant] limited its initial review to ██████████ October 4, 2018 note

14

In response to Defendant's denial, Plaintiff and ▮▮▮▮ submitted additional records. AR 736, 739, 944. One of the records was from ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮; a "problem date" of October 8, 2018; and a "status" as "current." AR 1400. Another record, from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, indicated that Plaintiff was seen for ▮▮▮▮▮▮▮▮. AR 1420. The note stated a past medical history ▮▮▮▮▮▮▮▮ but also indicated that ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

and a July 16, 2018 note from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮" Dkt. No. [21-1] at 8 (citing AR 937). The suggestion appears to be that Defendant unnecessarily limited its review despite having access to ▮▮▮▮▮ notes regarding Plaintiff's treatment since November 14, 2017. Id. Defendant denies this factual contention and cites documents in the record indicating that the Aetna analyst who initially reviewed Plaintiff's long-term disability claim "specifically note[d] that he would review Plaintiff's short-term disability claim in connection with processing her [long-term disability] claim." Dkt. No. [27-1] ¶ 77 (citing AR 687). The record does not unequivocally support either side on this point. Though the analyst's notes suggest that he intended to review Plaintiff's short term disability claim, see AR 687–88, Defendant's letter advising Plaintiff of its decision to deny long-term disability benefits states that the review consisted of only two documents—"Return to work note from ▮▮▮▮ ▮▮▮▮▮ [sic] dated 10/04/2018" and "office notes from ▮▮▮▮ ▮▮▮▮ dated 07/16/2018"—and also states "[t]here is no medical documentation provided from ▮▮▮▮▮▮▮▮▮▮ at this time." AR 937–38. Regardless, the administrative record indicates that the two independent physicians who subsequently reviewed Plaintiff's long-term disability claim as part of Plaintiff's appeal did, in fact, review medical records dating back to the time of Plaintiff's short-term disability claim, as well as ▮▮▮▮▮▮▮ "Physician's Review." See AR 984–85, 1375.

███████.” AR 1421. The note suggested that Plaintiff suffered from ███████ ████████████████████████████████████████████ AR 1421.

Finally, Plaintiff also submitted notes from her follow-up visit with ███████ on October 8, 2018. AR 1147. In the "Chief Complaint" section of his notes from the visit, he recorded that ████████████████████ ████████████████████████████████████████████

███████ She has applied for long-term disability with her job, which seems reasonable at this time because ████████████████████████.″ AR 1147.

As with his notes from June 27, 2018, through November 5, 2018, the ████████████████████ section of ███████ notes in October indicated that ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████ ███████████████

In a letter dated November 13, 2018, Defendant notified Plaintiff that, despite its review of the additional records, Defendant nevertheless had

determined that there remained "insufficient clinical findings to substantiate a functional impairment from your own sedentary occupation due to ███████████ condition." AR 944. The letter noted that ███ ███████ notes from October 8, 2018, "[d]id not list any ███████ ███████ impairment on the ███████████ exam." AR 944. At this time, Defendant notified Plaintiff that she could file a formal appeal of its long-term disability decision. AR 944.

### E. Plaintiff's First Appeal of Defendant's Long-Term Disability Decision

On November 14, 2018, ███████ submitted a letter appealing—and expressing his disagreement with—Defendant's decision regarding Plaintiff's long-term disability claim. AR 1223. ███████ wrote,



AR 1223.

Defendant notified Plaintiff in a letter dated November 26, 2018, that the appeal process had begun. AR 946. Plaintiff herself also submitted an appeal letter to Defendant on December 14, 2018, stating that she was disabled and was suffering from various ███████ issues, including

████████████████████████████████████████████████

████████████████████████████. AR 1369–70.

As part of Plaintiff's appeal, Plaintiff's records were peer-reviewed by

████████████████, a physician board-certified in ██████████. AR 1374–78.

████████████ was referred by a third-party vendor, ████, and he reviewed

Plaintiff's file, which included medical records from November 2017 to

November 2018. AR 1374–75.

In his report, ████████ expressed his opinion that the records

demonstrated████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

AR 1376. With regard to whether there was "evidence that the condition(s)

resulted in restriction and or limitations for the claimant" during the time

relevant to Plaintiff's claim, ████████████ concluded,

The conditions alleged in the record could create substantial impairment, but the actual subjective reports and examination findings do not reflect such a level of impairment. One would expect significant subjective distress to be accompanied by abnormal ▮▮▮▮▮ examinations . . . . One would expect that the claimant's treatment program would be intensified in the face of progressively worsening symptoms and impairment. This has not happened in this case, with recommended follow-up occurring at interval [sic] of 1-3 months and no adjunctive treatment added.

AR 1377.

In a December 17, 2018 letter, Defendant sent a copy of ▮▮▮▮▮ report to ▮▮▮▮▮, requesting that he respond within ten days regarding his agreement or disagreement. AR 949. On January 6, 2019, Plaintiff communicated with Defendant in response to ▮▮▮▮▮ report. AR 770–75. She explained that ▮▮▮▮▮ had been treating her for nearly ▮▮▮▮▮ and that, since November, 15, 2017, she had been significantly limited in her level of functionality and was unable to do many everyday activities. AR 771–74. She stated that ▮▮▮▮▮



In a letter dated January 10, 2019, Defendant notified Plaintiff that that its original decision regarding Plaintiff's long-term disability claim remained unchanged. AR 959–60. Defendant noted that ▮▮▮▮▮ had not responded to ▮▮▮▮▮ report. AR 959. Defendant stated that it had

reviewed "all of the information previously submitted, as well as new documentation[,] and reevaluated your claim in totality." AR 959. Defendant stated that Plaintiff's record had been reviewed by ███████ and explained his opinion and conclusions in detail. AR 959. In line with ███████ opinion, Defendant concluded that there was a "lack of medical evidence from a physical and mental health perspective supporting a functional impairment preventing [Plaintiff] from performing the material duties of [her] own occupation." AR 960. Defendant notified Plaintiff of her right to a second appeal. AR 960.

### F. Plaintiff's Second Appeal and Defendant's Final Long-Term Disability Decision

Plaintiff submitted an appeal request on January 19, 2019. AR 1364. In support of Plaintiff's appeal, ███████ wrote a letter to Defendant dated February 5, 2019, in which he stated that Plaintiff's "diagnosis is consistent with ███████████████████████████████████" and that ████████████████████████████████████████████ AR 1221. He noted that he "[c]onsider[ed] Plaintiff disabled for regular employment." AR 1221. ███████ also stated, "Some treatment notes may not be detailed enough as required by disability evaluation. I do not evaluate for disability but I can render my opinion and judgment based on ███████. If information isn't adequate for disability, I recommend an independent disability evaluation done by ███████ . . . ." AR 1221.

On February 22, 2019, Plaintiff also notified Defendant that she had been awarded Social Security disability benefits. AR 809. On February 13, 2019, ████████████, of the Social Security Administration had determined that Plaintiff met listing ██████ and was therefore disabled as of November 15, 2017. AR 1166–68. ████████ noted Plaintiff's history of ████████ issues and stated that Plaintiff likely had ████████ ████████████████████████████ and thought it was reasonable for her to seek long-term disability benefits. See AR 1167.

In a report dated February 26, 2019, and as part of the final review process for Plaintiff's long-term disability claim, Plaintiff's file was reviewed by ████████, a physician board-certified in ████████ ████████. AR 984–91. ██████ was referred by a third-party vendor, ████████████, and reviewed the medical records in Plaintiff's file, including records dating back to Plaintiff's ████████ ████████. AR 984–85, 990. ██████ concluded that there was sufficient evidence of ████████████████████ ████████████████████████████████ AR 990. However, ██████ concluded that "functional impairment with restrictions/limitations was not supported" for the relevant period in review because "[t]here were no measurable data and/or examination findings to support the claimant's complaints and severity of her ████████ conditions for the period in review." AR 990. ██████ noted that Plaintiff

had "reported     issues, but there was no formal    testing performed. It was noted by providers that



AR 990. Though Plaintiff submitted additional medical information that was subsequently reviewed by   , his opinion remained unchanged. AR 1011–15.

In a letter dated April 16, 2019, Defendant notified Plaintiff of its decision to uphold its original determination regarding her long-term disability claim. AR 1026. Defendant's letter summarized the medical records it had reviewed. AR 1026–27. The letter explained that Defendant had received "correspondence . . . in the form of letters, multiple e-mails, a copy of your claim file from the Social Security Administration and progress notes from your treating providers." AR 1027. Defendant stated that, though Plaintiff "carr[ied] medical conditions for which on-going treatment may be beneficial, these do not rise to a level of severity as to prevent you from performing the material duties of your own occupation . . . ." AR 1027. The letter noted    conclusion that Plaintiff's medical records did not support a level of functional impairment that would preclude Plaintiff from performing her work duties and concluded, "Based on our review of the medical information in your claim file, we determined there is a lack of medical evidence from a physical and mental health perspective supporting

22

a functional impairment preventing you from performing the material

duties of you own occupation." AR 1027.

Defendant's letter also acknowledged that Plaintiff had been

approved for Social Security Disability Income and noted that Defendant

had reviewed Plaintiff's Social Security claim file as part of Plaintiff's

appeal. AR 1027. Defendant distinguished its decision from the Social

Security Administration's determination:

> [Social Security Administration] regulations require that
> certain disease/diagnoses or certain education or age levels be
> given heavier or even controlling weight in determining
> whether an individual is entitled to [Social Security Disability
> Income] benefits. Our review finds that the medical
> information provided which consisted of medical records from
> ▮▮▮▮▮▮▮▮ and various providers did not support a functional
> impairment preventing you from performing the material
> duties of your own occupation as a Deployment Specialist.
> Therefore, even though you are receiving SSDI benefits, our
> review confirms you do not meet the test of disability under
> your employer's [long-term disability] policy and we find you
> are not eligible for [long-term disability] benefits . . . .

AR 1027. Following Defendant's final decision regarding her long-

term disability benefits, Plaintiff filed this lawsuit.

### III.  LEGAL STANDARD

"ERISA itself provides no standard for courts reviewing the benefits

decisions of plan administrators or fiduciaries." Blankenship, 644 F.3d at

1354 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109

(1989)). However, the Eleventh Circuit has "established a multi-step

framework to guide courts in reviewing an ERISA plan administrator's

benefits decisions[:]"

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator decision in fact is "de novo wrong," then determine whether he [or she] was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "de novo wrong" and he [or she] was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his [or her] decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he [or she] operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.

> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Id.

"Review of the plan administrator's denial of benefits is limited to

consideration of the material available to the administrator at the time it

made its decision." Id. at 1354 (citing Jett v. Blue Cross & Blue Shield of

Ala., 890 F.2d 1137, 1140 (11th Cir. 1989)). "Accordingly, the Court conducts its review of the administrative record, taking into account the arguments presented by the parties in their briefs." Bauman v. Publix Super Markets, Inc. Emp. Stock Ownership Plan, No. 3:15-cv-75-WSD, 2017 WL 5236148, at *5 (N.D. Ga. Mar. 17, 2017) (citation omitted).

## IV.   CONCLUSIONS OF LAW

### A. Whether Defendant's denial was "de novo wrong"

Under the first step of the Eleventh Circuit's framework, the Court reviews the record that was before the plan administrator and determines whether the administrator's decision to deny Plaintiff's claim was wrong. Blankenship, 644 F.3d at 1355. At this step, the Court "stands in the shoes of [Defendant] and starts from scratch, examining all the evidence before [Defendant] as if the issue had not been decided previously." Smith v. Cox Enters., Inc., 81 F. Supp. 3d 1366, 1378 (N.D. Ga. 2015) (quotation marks omitted, alterations adopted, and citations omitted). However, Plaintiff "bears the burden of proving that she is disabled and that [Defendant's] decision is wrong." Herring v. Aetna Life Ins. Co., 517 F. App'x 897, 899 (11th Cir. 2013) (citing Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1247 (11th Cir. 2008)). "If the Court finds, by a preponderance of the evidence, that [Plaintiff] is entitled to benefits, then the decision was de novo wrong." Smith, 81 F. Supp. 3d at 1378.

After reviewing the record, the Court finds that there was sufficient evidence to support a conclusion that Plaintiff was functionally disabled during the period relevant to her long-term disability claim. Indeed, as Defendant acknowledges, Plaintiff was found to be functionally disabled and received short-term disability benefits for at least part of the period that was included within her long-term disability claim. See AR 558–62. Additionally, during some of the office visits in which ▮▮▮▮▮▮ notes indicated "normal" ▮▮▮▮▮▮ examinations, ▮▮▮▮▮▮ notes often still reported ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See, e.g., AR 1153–59. This, taken in conjunction with the fact that ▮▮▮▮▮▮ continued to express his support for Plaintiff's disability claim and submitted letters of appeal that noted his belief that she had, in fact, become functionally disabled, weigh in favor of a finding that Plaintiff was functionally disabled. See, e.g., AR 1221, 1223.

Though Defendant concluded that ▮▮▮▮▮▮▮▮▮▮ examination notes from June 2018 to November 2018 did not support a finding of functional disability, and though Defendant may not have been required to draw inferences in Plaintiff's favor in the face of discrepancies regarding ▮▮▮▮▮▮▮▮ examination notes, the Court nevertheless finds that there was sufficient evidence elsewhere in the record to support a finding that Plaintiff was functionally disabled,

notwithstanding those ▮▮▮▮▮ examination notes. Therefore, the
Court finds after a de novo review of the record that it is at least arguable
that Defendant's decision was wrong. Because Defendant was vested with
discretion in making benefits determinations under the policy, the Court
must proceed and consider whether, assuming the decision was wrong, it
was nevertheless reasonable. Blankenship, 644 F.3d at 1355.

### B. Whether Defendant's denial was reasonable or arbitrary and capricious

Under this portion of the Eleventh Circuit's framework, Plaintiff
"must demonstrate that [Defendant's] decision to deny her [long-term
disability] benefits was arbitrary and capricious; that is she must show that
[] no reasonable grounds support [Defendant's] decision. Herring, 517 F.
App'x at 899 (citing Glazer, 524 F.3d at 1246). "As long as a reasonable
basis appears for [Defendant's] decision, it must be upheld as not being
arbitrary and capricious, even if there is evidence that would support a
contrary decision." White v. Coca-Cola Co., 542 F.3d 848, 856 (11th Cir.
2008) (quoting Jett, 890 F.2d at 1140).

 Plaintiff argues that Defendant's decision to deny Plaintiff long-term
disability benefits was unreasonable for at least two primary reasons: (1) ▮
▮▮▮▮ and ▮▮▮▮ reviews were "intrinsically flawed" and thus it was
unreasonable for Defendant to rely on them in reaching its decision to deny
Plaintiff's long-term disability benefits; and (2) despite Defendant's ability

to have Plaintiff independently evaluated by a physician to potentially resolve any ambiguities raised by Plaintiff's medical records, Defendant relied instead upon "file" reviews by two independent physicians. Dkt. No. [21-1] at 21–24.

To begin, Plaintiff argues that Defendant's reliance on the opinions of its two independent physician reviewers was unreasonable. Id. at 21–22. Plaintiff primarily takes issue with some of the conclusions and opinions expressed by ▮▮▮▮ and ▮▮▮▮ . Dkt. Id. For example, Plaintiff argues that ▮▮▮▮ review is flawed because he states "that

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮." Id. at 22 (citing AR 954). Likewise, Plaintiff argues that ▮▮▮▮ "report is similarly problematic[]" because, for example, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮." Id. (citing AR 1214). However, Plaintiff does not cite authority suggesting that it is proper for the Court itself to weigh the relative strengths or weaknesses of different physicians' professional opinions.[6]

---

[6] Plaintiff also suggests that ▮▮▮▮ conclusions were based on his observation that there was "no evidence of an inability to perform activities of daily living (ADL'S) or an inability to maintain hygiene." See Dkt. No. [21-1] at 22 (quoting AR 1214). Plaintiff argues that "[l]egally . . . the ability

The relevant inquiry, therefore, is whether it was reasonable for Defendant to rely on ▓▓▓▓▓▓ and ▓▓▓▓▓▓ opinions in drawing the conclusion that Plaintiff's medical records did not support a finding of functional impairment during the time relevant to Plaintiff's long-term disability claim. The Supreme Court has explained that "[p]lan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," but also that courts may not "impose on administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

Here, as Defendant argues, Defendant relied on ▓▓▓▓▓▓ own medical records—his ▓▓▓▓▓▓ examination notes from June to November 2018—in reaching the conclusion that there was an insufficient showing that Plaintiff was functionally disabled such that she could not perform the material duties of her job. Dkt. No. [22-10] at 21–22. In reaching this conclusion, Defendant relied on the opinions of two physicians board certified in ▓▓▓▓▓▓ who reviewed ▓▓▓▓▓▓ records

---

to perform activities of daily living does not translate into the ability to perform work." Id. However, this was not the sole basis for ▓▓▓▓▓▓ opinion, nor for Defendant's ultimate denial of benefits, as ▓▓▓▓▓▓ noted other issues, such as a lack of "▓▓▓▓▓▓ testing" and inconsistent examination findings on days that ▓▓▓▓▓▓ had stated Plaintiff was not doing well. AR 990.

and determined that, at least partly due to these conflicting ███████

examinations, there was insufficient evidence of continued functional

disability. AR 990, 1376–77. The Eleventh Circuit has stated that "[e]ven

where [the claimant's] own doctors offered different medical opinions than

[the administrator's] independent doctors, the plan administrator may give

different weight to those opinions without acting arbitrarily and

capriciously."[7] Blankenship, 644 F. 3d at 1356 (citations omitted).

     Plaintiff also argues that it was generally unreasonable for Defendant

to base its decision on the apparent inconsistencies in ███████

███████ examination notes beginning on June 27, 2018. Dkt. No. [26-1] at

19–22. Though Plaintiff appears to concede that ███████ notes "reflect

'normal' ███████ examinations" from the time period of June 27,

2018, to November 5, 2018, Plaintiff argues that these discrepancies can be

easily explained: ███████████████████████

███████████████████████████

███████████████████████████

███████████████████ Id. at 19. Plaintiff argues that it

was unreasonable for Defendant to reach its decision based on these

particular notes because "[t]he inconsistences are minor and do not reflect

_____

[7] In the same decision, the Eleventh Circuit also reiterated that "[p]lan
administrators need not accord extra respect to the opinions of a claimant's
treating physicians." Id. (citing Nord, 538 U.S. 822, 834 (2003)).

the overall thrust of ███████ evidence." Id. at 21; see also Dkt. No. [29] at 3. Plaintiff suggests that Defendant has therefore based its decision "on the evidentiary equivalent of a typographical error." Dkt. No. [26-1] at 22.

   As an initial matter, it appears that ███████ himself acknowledged that his records may not have supported a finding that Plaintiff was functionally disabled under the terms of the group policy: "Some treatment notes may not be detailed enough as required by disability evaluation." AR 1221. More importantly, however, the Court's "[r]eview of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." Blankenship at 1354. Therefore, as Defendant argues, the Court cannot simply adopt Plaintiff's supposition that the notes from ███████████████ examinations from June 27, 2018, to November 5, 2018, "may have been 'default language'" and did not, in fact, reflect ███████ clinical observations from those visits. See Dkt. Nos. [26-1] at 19, 22; [30] at 5. Moreover, it is difficult to square Plaintiff's suggestion that Defendant unreasonably focused on the "evidentiary equivalent of a typographical error" rather than viewing the "whole picture" of Plaintiff's files with the fact that—following the route of Plaintiff's argument—███████ appears to have "forgotten" to change the "default language" of his ███████ examinations over a period of almost five months, which included at least

four visits with Plaintiff, despite his earlier records reflecting that he often updated this section of his notes.

Again, the Court must only consider whether there was a reasonable basis for Defendant's long-term disability decision. In this case, the Court does not find that Defendant entirely lacked a reasonable basis for relying on ███████ own records and the opinions of two physicians board-certified in ██████ to conclude that the change in ████████ notes from June through November 2018 may have indicated that Plaintiff was no longer functionally disabled, given that: (1) as Plaintiff herself argues, ███ ████████████████ examination notes prior to June 27, 2018, often reflected findings that appeared more consistent with other observations in his clinical notes from the same days, suggesting he usually updated that section of his notes; (2) ██████████████ examinations changed as of June 27, 2018, onward; and (3) the physicians reviewing Plaintiff's file on appeal noted that some of her medical records contained inconsistencies and concluded, in light of this, that Plaintiff's records did not support a finding of functional impairment during the relevant period.[8] See Blankenship, 644 F.3d at 1356.

---

[8] Plaintiff also takes issue with Defendant's denial of long-term disability benefits in light of the Social Security Administration's determination that Plaintiff met listing ██████ and was therefore entitled to Social Security Disability Income. Dkt. No. [29] at 7–8. In her brief supporting her Motion for Summary Judgment, Plaintiff first argues that the Social Security Administration's decision showed that Defendant's denial was de novo

description

Plaintiff also argues that "[w]hat truly makes Aetna's decision unreasonable is its failure to send [Plaintiff] to an independent evaluation." Dkt. No. [21-1] at 24. To this end, Plaintiff argues that "[a]n insurer's utilization of only reviewing doctors in ERISA cases involving . . . ██████ is often found to be arbitrary and capricious because these diseases . . . are best measured through actual examination." Id. (citing Kinser v. The Plan Admin. Comm. of Citigroup Inc., 488 F. Supp. 2d 1369, 1383 (M.D. Ga. 2007)). Though the Court can appreciate the practical significance of Plaintiff's arguments regarding the difficulty of "objectively" evaluating ██████ and a preference toward in-person examination, the Eleventh Circuit has nevertheless stated—in a case that post-dates Kinser—

---

wrong. Dkt. No. [21-1] at 20. Then, Plaintiff's Reply suggests she is also arguing that "[Defendant] acted unreasonably in ignoring Social Security's finding that [Plaintiff] was disabled." Dkt. No. [29] at 7–8. Because the Court has already determined that Defendant's denial was arguably wrong under the first step of the Blankenship framework, the Court need now only consider whether Defendant's decision was unreasonable. Both parties agree that the "the approval of disability benefits by the Social Security Administration is not considered dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA-covered plan." Oliver v. Aetna Life Ins. Co., 613 F. App'x 892, 897 (11th Cir. 2015) (citation omitted). Thus, even accepting Plaintiff's argument that the Social Security Administration's determination that Plaintiff met listing ██████ indicated that Plaintiff was indeed experiencing some level of functional disability, the Court has already discussed why Defendant's determination to the contrary did not entirely lack a reasonable basis. Again, at this stage of the framework, "[a]s long as a reasonable basis appears for [Defendant's] decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." White, 542 F.3d at 856 (quoting Jett, 890 F.2d at 1140).

33

that an administrator's decision to rely on file reviews by independent physicians instead of physical examinations is not per se unreasonable. See Blankenship, 644 F.3d at 1357 (citation omitted) ("[W]e do not conclude, as the district court did, that [the administrator's] use of 'file' reviews by its independent doctors—instead of live, physical examinations of [the claimant]—counted as evidence that [the administrator] acted arbitrarily and capriciously, particularly in the absence of other troubling evidence."); see also Hopp v. Aetna Life Ins. Co., 3 F. Supp. 3d 1335, 1355 (M.D. Fl. 2014).

Finally, the Court must also consider Defendant's conflict of interest as both the group policy administrator and the payor of the policy's long-term disability benefits. Blankenship 644 F.3d at 1355 ("A pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds."). At this step, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." Id. (quoting Doyle, 542 F.3d at 1360).

Plaintiff's primary argument on this point comes in her Reply in support of her Motion for Summary Judgment. Dkt. No. [29] at 8. Plaintiff alleges that Defendant encouraged Plaintiff to sign a "benefits coordination service form" with an entity called Allsup and to "go through Allsup to obtain her social security benefits." Id. Plaintiff argues that this agreement

"allowed Allsup to coordinate with [Defendant] regarding [Plaintiff's] entitlement to [Social Security Disability Income] benefits." Id. (citing Dkt. No. [29-1]). Additionally, Plaintiff argues that Defendant "made [Plaintiff] agree to reimburse it with those monies should such an award result in an overpayment." Id. (citing AR 1416).

Plaintiff alleges that these arrangements essentially allowed Defendant to take inconsistent positions—to argue to the Court that Plaintiff is not disabled "while arguing simultaneously through its agent" to the Social Security Administration "that [Plaintiff] is disabled"—all to its own benefit. Id. at 9. Plaintiff cites Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 118 (2008),[9] arguing that "such a course of events" may be "an indication that the conflict of interest affected decision making." Id. at 8.

One of the problems for Plaintiff's argument, however, is that the documents Plaintiff refers to when suggesting that Defendant "encouraged" Plaintiff to "go through Allsup to obtain her social security benefits" do not support this allegation. Though the benefits coordination form Plaintiff signed with Allsup authorized Allsup "to disclose to and/or discuss with

---

[9] In Glenn, the Supreme Court noted that the administrator "had encouraged [the claimant] to argue to the Social Security Administration that she could do no work . . . and then ignored the agency's finding in concluding that she could do sedentary work.[.]" Glenn, 554 U.S. at 118. In the underlying decision that the Supreme Court affirmed in Glenn, the Sixth Circuit explained that the administrator had "steered [the claimant] to Kennedy & Associates, a law firm specializing in obtaining [Social Security disability] benefits." Glenn v. MetLife, 461 F.3d 660, 663 (6th Cir. 2006).

Aetna Inc. any and all information . . . which Allsup has or may develop or acquire," including with regard to "Social Security Disability Insurance Benefits," there is no indication from that document—or any others cited by Plaintiff—that Defendant (1) encouraged Plaintiff to sign this agreement or (2) that Defendant in fact took a more active role in helping Plaintiff secure Social Security Disability Income before then denying her long-term disability benefits claim. See Dkt. No. [29-1]. The Aetna Reimbursement Agreement likewise only indicates that Plaintiff agreed to reimburse Defendant "for any and all overpayments" received as a result of being awarded both Social Security benefits and long-term disability benefits under Defendant's policy. See AR 1416. Because Plaintiff has not directed the Court to documents that more clearly support its contention that Defendant encouraged this course of action and then actually benefitted from its ability to take potentially inconsistent positions, it would be improper for the Court to simply infer that this is, in fact, true. And because Plaintiff has not presented additional arguments as to why Defendant's conflict of interest may have rendered its decision arbitrary, the Court does not find that Plaintiff has carried its burden of demonstrating that Defendant's decision was arbitrary in light of its conflict of interest. Blankenship, 644 F.3d at 1355.

For the reasons discussed above, the Court does not conclude that Defendant's decision to deny long-term disability benefits completely

lacked a reasonable basis. The Court therefore does not find that Defendant's denial was arbitrary or capricious.[10]

## V.   CONCLUSION

In accordance with the foregoing, Defendant Aetna Life Insurance Company's Motion for Judgment on the Administrative Record [22] is **GRANTED**, and Plaintiff Melanie Ogletree's Motion for Summary Judgment [21] is **DENIED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 18th day of December, 2020.

**Leigh Martin May**
**United States District Judge**

---

[10] Because the Court finds that Defendant's decision to deny benefits was reasonable, it need not reach the parties' arguments regarding the potential applicability of the policy's twenty-four-month limitation on long-term disability benefits.